TUCKER v. WESTLAKE

[136 N.C. App. 162 (1999)]

New trial.

Judges McGEE and EDMUNDS concur.

---

WILLIAM A. TUCKER, JR. AND JAMES P. ASHBURN, T.C. HOMESLEY, JR., AND WILLIAM Y. WILKINS, AS CO-ADMINISTRATORS OF THE ESTATE OF WILLIAM ARNOLD TUCKER, SR., PLAINTIFFS v. ANNE STEWART WESTLAKE (AKA ANNE STUART HARLEY TUCKER WESTLAKE) AND HUSBAND, WILLIAM RICHARD WESTLAKE, DEFENDANTS

No. COA99-211

(Filed 21 December 1999)

### 1. Evidence— unprobated will—action for resulting trust

The trial court erred in an action to establish a resulting trust in the admission of an unprobated will on the issue of intent where the only issue before the jury was Mrs. Tucker's intent in 1972, when she purchased the property and titled it in defendant's name, and the will spoke only to her intent in 1961 and was testamentary in nature. However, there was no prejudice in light of other evidence.

### 2. Evidence— negotiated agreement and consent order—action for resulting trust

There was no prejudicial error in an action to establish a resulting trust in the improper admission of a negotiated agreement and consent order from the estate administration of Mr. Anderson, from whose widow the property in question was purchased. N.C.G.S. § 8C-1, Rule 408 sets forth a broad exclusionary rule prohibiting introduction of compromise offers and agreements; however, there was an abundance of evidence otherwise showing that Ms. Tucker (the purchaser) intended to treat the property as a gift to her daughter (in whose name the property was titled).

### 3. Trials— continuance—insufficient time to prepare for trial

The trial court did not abuse its discretion by denying a motion for a continuance where plaintiffs alleged an insufficient time to prepare for trial in that the court calendar was sent to them two weeks before the trial was to begin, but the litigation had been going for four years and a previous appeal had held that

**TUCKER v. WESTLAKE**

[136 N.C. App. 162 (1999)]

a directed verdict motion was improperly granted, so that plaintiffs would surely have known that a second trial was imminent, and plaintiffs failed to show how an out-of state deposition taken three weeks before the trial changed the underlying issue.

Judge WYNN dissenting in part.

Appeal by plaintiffs from judgment entered 30 September 1998 by Judge Peter M. McHugh in Iredell County Superior Court. Heard in the Court of Appeals 25 October 1999.

*Sharon H. Lowe for plaintiff-appellants.*

*Pope, McMillan, Kutteh, Simon & Baker, P.A., by William H. McMillan, for defendant-appellees.*

LEWIS, Judge.

This case stems from a dispute over the ownership of property located at 528 Walnut Street in Statesville, North Carolina, which is presently titled in the name of defendant Anne Stewart Westlake. Plaintiff William A. Tucker, Jr. and Mrs. Westlake are brother and sister and the only children of Dorcas T. Tucker. In 1972, Dorcas Tucker purchased the Walnut Street property from the estate of her cousin, Ina Anderson, following Mrs. Anderson's death. Because Mrs. Tucker's husband would not co-sign the promissory note or deed of trust, the property was titled in the name of defendant Anne Westlake, with the accompanying promissory note signed by Mrs. Westlake and her husband, William Westlake, also a defendant here. Although defendants were the debtors of record, Mrs. Tucker subsequently made all the payments on the debt. The note has now been paid in full and the deed of trust has been canceled of record. Pursuant to a provision in Mrs. Anderson's will, her husband, Thomas Anderson, lived on the property until his death in 1977. Mrs. Tucker then lived on the property from 1977 until 1994, when she died intestate.

Plaintiff William Tucker, Jr. claims that, despite the property being titled in his sister's name, his mother actually owned the property by virtue of a resulting trust, since his mother paid for the property. Upon his mother's death, he contends the property then passed to him and his sister by intestate succession, entitling him to a one-half undivided interest. Defendant Mrs. Westlake, on the other hand, claims that her mother intended the property to be a gift to her, such that she owns the property outright. At trial, the jury was only asked

to decide whether a resulting trust had been created by the actions of Mrs. Tucker. The jury answered in the negative, and plaintiffs now appeal.

[1] Essentially, this case concerns Dorcas Tucker's intent: did she intend to make a gift to her daughter of the Walnut Street property or create a resulting trust for her own benefit? In this regard, plaintiffs submit two evidentiary arguments for our consideration relating to that intent. First, they contest the admission of a copy of Mrs. Tucker's purported last will and testament from 1961. It was found among her effects following her death, but the original has never been found or probated. It purports to leave all her property to defendant Anne Westlake. Because the will was never probated (Mrs. Tucker's estate instead being distributed via intestacy), the trial judge allowed its introduction for the sole purpose of showing Mrs. Tucker's intent. The jury was then given a limiting instruction to that effect. We conclude that the admission of this will in evidence was error.

Under our rules, all relevant evidence is admissible. N.C.R. Evid. 402. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401. In other words, evidence is relevant if it has any logical tendency, no matter how slight, to prove a fact at issue. *State v. Sloan*, 316 N.C. 714, 724, 343 S.E.2d 527, 533 (1986). The determination of relevancy must be measured in light of the issues actually before the jury at trial. *Pearce v. Barham*, 267 N.C. 707, 712, 149 S.E.2d 22, 26 (1966). Here, the only issue before the jury was Mrs. Tucker's *inter vivos* intent in 1972 when she purchased the Walnut Street property and titled it in defendant Anne Westlake's name. Even assuming the purported copy of the unprobated will is indeed a true indication of Mrs. Tucker's intent, it only speaks to her intent in 1961 and thus has little or no bearing on her intent in 1972. More significantly, however, this is a will, which is testamentary in nature. How Mrs. Tucker purportedly intended to dispose of her property at her death simply bears no logical relation to how she intended to treat the Walnut Street property during her lifetime.

Though we have found no North Carolina case law discussing the introduction of unprobated wills into evidence, we find the following summary of the common law instructive:

[I]t is the general rule, both under statute and otherwise, that a probated will is admissible in evidence, and that an unprobated

will is not receivable into evidence . . . . [A]n unprobated will, under governing statute or otherwise, may not be admissible as evidence affecting title to property, although it may be admissible for purposes other than that of a will. Thus, such an unprobated instrument has been held admissible to show an acknowledgment of liability on the part of the testator, as for services rendered, or to show that one called as a witness against a later will is interested, as a devisee under the former will, in having the latter will set aside, and is therefore incompetent.

95 C.J.S. *Wills* § 579 (1957) (footnotes omitted). Defendants have done that which the common law forbade: introduce an unprobated will in evidence in an attempt to affect title to property. To admit such evidence circumvents all the rules of probate that have been formulated to ensure that a will represents the clear, unequivocal, and final intent of the decedent. Accordingly, the trial court erred by admitting the purported 1961 copy of Mrs. Tucker's will, even if for the limited purpose of showing her intent.

Although the trial court erred by admitting the copy of Mrs. Tucker's 1961 will into evidence, this does not end our inquiry. "It is fundamental that no reversal or new trial will be awarded where there is no prejudicial error." *Keels v. Turner*, 45 N.C. App. 213, 219, 262 S.E.2d 845, 848, *disc. review denied*, 300 N.C. 197, 269 S.E.2d 624 (1980). We conclude that the admission of the 1961 will resulted in no prejudice to plaintiffs. The jury heard ample evidence suggesting Mrs. Tucker intended the Walnut Street property to be a gift to defendant Anne Westlake. Various tax listings submitted by Mrs. Tucker to Iredell County specifically listed Mrs. Westlake as the owner of the property. A neighbor testified that Mrs. Tucker always referred to the property as belonging to Mrs. Westlake. All the insurance policies on the home were titled by Mrs. Tucker in Mrs. Westlake's name. And a building permit for certain work on the home was also issued in Mrs. Westlake's name. Furthermore, there was evidence, including several letters plaintiff William Tucker, Jr. wrote to Mrs. Westlake, showing that Mr. Tucker himself understood the property belonged to her. In light of all this other evidence, we cannot say that plaintiffs were prejudiced by the trial court's error.

[2] Plaintiffs' next evidentiary argument pertains to the admission of certain items relating to. the settlement of Thomas Anderson's estate. Upon Mr. Anderson's death in 1977, a dispute between Mrs. Tucker and the administratrix of Mr. Anderson's estate arose as to ownership of certain personal property in the Walnut Street home, given that Mr.

Anderson had lived there for a period of time. In an attempt to settle the dispute, plaintiff William Tucker, Jr., on behalf of his mother, authored a document entitled "Negotiated Agreement between Dorcas T. Tucker, et al. and Elizabeth S. Boyd, Executrix of the Estate of Thomas H. Anderson." The agreement was dated 22 October 1985 and included the following stipulation: "Anne S.H. Westlake, 6 Pine Drive, Westport, Connecticut is the owner of the house at 528 Walnut Street, Statesville . . . ." The agreement was never signed; instead the parties subsequently entered into a consent order on 13 December 1985, which both Mrs. Tucker and plaintiff William Tucker, Jr. signed. That consent order included a similar stipulation: "Anne Stewart Westlake is the owner of the house at 528 Walnut Street." The trial court admitted both the Negotiated Agreement and the subsequent consent order to show Mrs. Tucker's intent and to show plaintiff William Tucker, Jr.'s understanding of his mother's intent regarding the Walnut Street property, namely that it ultimately belonged to his sister. Plaintiffs contend these documents were offers of compromise that were inadmissible under Rule 408. Again, we agree with plaintiffs' contention.

Rule 408 sets forth a broad exclusionary rule that prohibits the introduction of compromise offers, compromise agreements, and statements made during compromise negotiations. N.C.R. Evid. 408. The rule is founded on the premise that compromise offers are not necessarily suggestive of liability, but may be more a product of a desire to bring a dispute to a close. 1 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 106 (4th ed. 1993). Rule 408, therefore, is designed to encourage settlements. *Id.* By its very terms, Rule 408 only applies when the evidence is being used to prove liability or to show the invalidity of the claim; the rule does not prohibit evidence from being introduced for other purposes, such as bias or prejudice. N.C.R. Evid. 408. Here, defendants introduced the Negotiated Settlement and the consent order for the very purpose prohibited by the rule—to show that plaintiffs' assertion of an ownership interest in the Walnut Street property is invalid.

Defendants argue that Rule 408 is inapplicable here because the compromise offers were made in 1985, ten years before the present dispute arose. There is no question that Rule 408 necessarily requires an existing dispute before it is applicable. *See Marina Food Assoc., Inc. v. Marina Restaurant, Inc.*, 100 N.C. App. 82, 88, 394 S.E.2d 824, 828, *disc. review denied*, 327 N.C. 636, 399 S.E.2d 328 (1990). But nowhere does the rule suggest that the existing dispute must also be

the pending one. Here, there was an existing dispute regarding Mr. Anderson's estate at the time the compromise offers were made. That is all Rule 408 requires.

Defendants also point out that the prior dispute concerned the ownership of personal property within the Walnut Street home, not the ownership of the Walnut Street home itself. They argue that a stipulation with respect to the ownership of the home had no bearing on that dispute and thus should not be excluded by Rule 408. We disagree. Distinct admissions of independent facts encompassed within compromise offers were admissible under the common law. Broun, *supra*, § 106. This is no longer the case, however, since the promulgation of Rule 408—*any* admissions that are included in compromise offers are excludable under Rule 408. *Id.* Thus, the stipulation with respect to ownership of the Walnut Street home, although not necessary for the adjudication of the 1985 dispute, is still inadmissible under Rule 408 because it is encompassed within a negotiated settlement agreement.

In passing, we note that plaintiff William Tucker, Jr. was technically not a party in the 1985 dispute over Mr. Anderson's estate. Some commentators have suggested that Rule 408 should not apply when the present litigant (i.e. plaintiff William Tucker, Jr.) was not a party to the prior dispute in which the compromise offer was made. *See, e.g.*, 2 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 135 (2d ed. 1994) (discussing the parallel provision in the Federal Rules of Evidence). This is logical, since the rule is designed to encourage settlements and a non-litigant arguably has no incentive to make a compromise offer that tends to suggest his own liability when he is not party to any suit in need of settling. But here, although Mr. Tucker may not have technically been a party, he was acting on behalf of his mother, who was a party to the suit. He thus had a legitimate incentive to settle the 1985 dispute. Accordingly, applying a "non-litigant limitation" to Rule 408 does not seem particularly warranted under the facts here.

Although the trial court improperly admitted the Negotiated Agreement and the consent order, we again conclude that the error was harmless. As stated earlier, there was an abundance of evidence otherwise showing that Mrs. Tucker intended to treat the Walnut Street property as a gift to her daughter.

[3] Finally, plaintiffs contest the trial court's denial of their motion to continue. Rulings on motions to continue are within the sound dis-

cretion of the trial judge and are thus not reviewable absent a manifest abuse of that discretion. *Jennings Glass Co. v. Brummer*, 88 N.C. App. 44, 49, 362 S.E.2d 578, 582 (1987), *disc. review denied*, 321 N.C. 473, 364 S.E.2d 921 (1988). We find no such abuse of discretion here.

Plaintiffs moved for a continuance here on the ground that they allegedly had insufficient time to prepare for trial. Specifically, they complain that the court calendar was not sent to them until just two weeks before the trial was to begin. We find this unpersuasive. This litigation has been going on for four years. Plaintiffs previously appealed to this Court from a grant of defendants' motion for a directed verdict at the conclusion of a first trial. In an unpublished opinion filed 16 June 1998, we held that the directed verdict motion had been improperly granted. Plaintiffs would surely have known that a second trial was then imminent.

Plaintiffs also maintain that an out-of-state deposition they had taken three weeks before trial had significantly changed the issues to be litigated, leaving them insufficient time to prepare for trial. Changed conditions are indeed a significant factor in considering a motion to continue. *Green v. Maness*, 69 N.C. App. 292, 294, 316 S.E.2d 917, 919, *disc. review denied*, 312 N.C. 622, 323 S.E.2d 922 (1984). Here, however, the issue over the course of this litigation has always remained the same: whether Mrs. Tucker intended the Walnut Street property to be a gift or a resulting trust. Plaintiffs have failed to show how the out-of-state deposition changed this underlying issue in any way. Accordingly, we conclude that the trial judge committed no abuse of discretion in denying plaintiffs' motion for a continuance.

No prejudicial error.

Judge MARTIN concurs.

Judge WYNN dissents in part.

Judge WYNN dissenting in part.

We all agree that the admission into evidence of the copy of Mrs. Tucker's 1961 unprobated will was error. Agreeably, the will was irrelevant to the issue of Mrs. Tucker's intent in 1972, and it defied the common law by being used in an attempt to affect title to the property. We, however, disagree as to whether the erroneous admission of the copied will was prejudicial error. I say it was.

The majority says that the plaintiffs were not prejudiced by the copied will's introduction because Mrs. Tucker submitted various tax listings showing Mrs. Westlake as the owner; a neighbor testified that Mrs. Westlake was the owner; the insurance policies were in Mrs. Westlake's name; and a building permit had been issued to Mrs. Westlake. None of that evidence presents a determinative defense to the plaintiffs' claim that the property was being held under a resulting trust. *See Ray v. Norris*, 78 N.C. App. 379, 382, 337 S.E.2d 137, 140 (1985) (stating that a "resulting trust arises when a person becomes invested with the title to real property under circumstances which in equity obligate him to hold the title and to exercise his ownership for the benefit of another. A trust of this sort . . . results from the fact that one man's money has been invested in land and the conveyance taken in the name of another"). Indeed, all of that evidence was consistent with the initial reasoning that Mrs. Tucker had titled the property in the name of Mrs. Westlake—to camouflage her actual ownership.

In my opinion, other evidence made this case a very close call for the trier of fact. For instance, Mrs. Tucker made all of the mortgage, insurance and tax payments while Mrs. Westlake made none of the payments.

Significantly, the record on appeal shows that in 1986, Mrs. Westlake verified a "Petition for Appropriate Relief, Permanent Injunction and Temporary Restraining Order" in which she joined Mrs. Tucker and Dr. William Tucker, Jr. against the City of Statesville, North Carolina. In that petition, Mrs. Westlake averred:

That the Petitioner, Anne Westlake, is the title owner of that property generally known as 528 Walnut Street in Statesville, North Carolina, said property being held for the use and benefit of the Petitioner, Dorcas T. Tucker, and being administered by the Petitioner, Dr. William A. Tucker, Jr.

Thus, I believe that the plaintiffs have met their burden of showing prejudicial error exists on appeal. *See Kennedy v. James*, 252 N.C. 434, 113 S.E.2d 889 (1960) (holding that the burden is on the appellant to show prejudicial error amounts to a denial of some substantial right). Therefore, unlike the majority, I cannot say that the erroneous introduction of the copied will did not prejudicially affect the outcome of this matter. Consequently, I would award the parties a new trial without the introduction of the tainted evidence.